# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:10-00260[24] |
| ) | Judge Sharp |
| MOHAMED SHARIF OMAR ) | |

## MEMORANDUM

Defendant Mohamed Sharif Omar has been imprisoned for more than four years, but has been convicted of no crime in this case. Rather, he merely stands accused of multiple crimes, the most serious of which relates to his alleged involvement in a sex trafficking ring. Yet, more than five years after the return of a highly-touted Indictment alleging a widespread conspiracy spanning at least three states,[1] no final judgment of conviction for sex trafficking has been entered as to any of the thirty individuals charged in this case, and none of those who have pled guilty to lesser offenses have been sentenced to serve terms of imprisonment greater than the time that Defendant has already served in pretrial detention.

Pending before the Court is Defendant's Renewed Motion to Reconsider Detention Order and Open Detention Hearing (Docket No. 3741), which raises the issue of whether continued incarceration violates his Fifth Amendment due process rights or his Fourteenth Amendment equal

---

[1] Press conferences announcing the return of the Indictment were held in both Nashville, Tennessee and St. Paul, Minnesota. See, 29 CHARGED IN BUST OF SEX SLAVE RING TIED TO 3 MINNEAPOLIS GANGS, http://www.twincities.com/newsletter-morning/ci_16559529 (Nov. 9, 2010); INVESTIGATION INTO SEX TRAFFICKING OF JUVENILES RESULTS IN FEDERAL INDICTMENT CHARGING 29 PERSON, http://www.justice.gov/archive/usao/tnm/pressReleases/2010/11-8-10.html (Nov. 8, 2010); INDICTMENT: SOMALI GANGS RAN SEX RING IN 3 STATES, http://www.mprnews.org/story/2010/11/08/somali-prostitution-ring (Nov. 8, 2010); AGENTS BUST MULTI-STATE SEX TRAFFICKING RING, http://www.cbn.com/cbnnews/us/2010/november/federal-agents-bust-multi-state-sex-trafficking-ring (November 9, 2010); (all websites last visited on January 11, 2016).

1

protection rights. On November 20, 2015, the Court heard oral arguments on the Motion, after which the parties were provided the opportunity to submit supplemental briefs. The Government did so on December 16, 2015 (Docket No. 3757), and Defendant followed suit on December 18, 2015 (Docket No. 3758).

Having considered the arguments of the parties and the voluminous record, and further given the peculiar circumstances of this case, the Court finds that the continued imprisonment of Defendant for any appreciable length of time will violate the due process clause. Accordingly, the Court will grant Defendant's Motion and release him pending trial, subject to appropriate terms and conditions.

**I.**

On October 20, 2010, a federal grand jury returned a 54 page, 21count Indictment against 29 Defendants, charging various conspiracies and offenses involving sex trafficking,[2] interstate transportation of stolen goods, access device fraud, and obstruction of justice. Defendant Omar was charged in six of those counts, with the potential penalties ranging from 5 years to life imprisonment. The case was assigned to Judge Haynes.[3]

More than a year later, on November 3, 2010, the grand jury returned a Superseding Indictment. As to Defendant Omar, the charges were the same.

On May 3, 2011, a Second Superseding Indictment was returned. That Indictment added a 30th Defendant, but retained the same charges as to Defendant Omar.

After the return of the Second Superseding Indictment, a jury trial on the sex trafficking

---

[2] The alleged victims in the sex-trafficking counts were identified in the Indictment as Jane Does One through Four.

[3] The case was reassigned to the undersigned on August 4, 2015.

2

counts was held as to nine Defendants who had not been severed, either by Order of the Court or by filing a notice requesting severance. Defendant Omar was among those who opted for severance.

Trial commenced on March 20, 2012 and concluded on April 30, 2012.[4] After five days of deliberation, the jury returned a split verdict – six Defendants were acquitted, and three were found guilty.[5]

On December 19, 2012, Judge Haynes entered an Order granting a judgment of acquittal or, alternatively, new trial as to the three Defendants who had been convicted. He concluded that while there was sufficient proof for the jury to find defendants engaged in a conspiracy to sex traffic a person under 18 years of age and that a jury could conclude that the Jane Does were minors, the Government's proof established several conspiracies. Judge Haynes also found that the Government failed to comply with discovery orders, and that the submission of 6,000 pages of material during trial which contained crucial evidence concerning Jane Doe Two's date of birth severely limited Defendants' ability to investigate whether she was, in fact, a minor.[6]

On the same day as Judge Haynes' ruling, Defendant Omar filed a "Motion for Speedy Trial or Release From Confinement." On February 1, 2013, Judge Haynes held a status conference and ordered that Defendant Omar and five others be released. Over the next few days, Magistrate Judge

---

[4] After the jury was empaneled, trial was continued for approximately one week so that Defendants could review discovery material that was presented to them by the Government during jury selection.

[5] Fifteen Defendants were originally involved in the trial. One was dismissed mid-trial on the Government's Motion, a mistrial was declared as to three, and two entered pleas during trial.

[6] That ruling and other decisions made by Judge Haynes are presently pending on appeal. There is no indication as to when the Sixth Circuit will issue its decision.

3

Knowles entered an Order Setting Conditions of Release as to each of those Defendants.[7] The Government appealed their release.

Defendant Omar was released from custody on February 1, 2013, and remained on supervision until March 25, 2013. According to United State Probation and Pretrial Service Officer Paul Montgomery who testified during the hearing before this Court, Defendant Omar worked at Invesco Auto during this period and complied with all the terms and conditions of release.

In between the jury's verdict and Judge Haynes's ruling on the acquitted Defendant's post-trial Motions and subsequent release of Defendant Omar and others, a Third Superseding Indictment was returned. That Indictment realleged many of the facts from the prior Indictment, but deleted counts relating to Defendants who had been acquitted, dismissed, or pled guilty.

Under the now controlling Third Superseding Indictment, Defendant Omar is charged with various crimes. He is charged in Counts 1 and 2 with conspiracy to commit sex trafficking, and in Counts 3 and 6 with obstruction of justice in relation to sex trafficking. He is also charged in Count 13 with recruiting, harboring or transporting a minor to be used in a commercial sex act, and in Count 14 with the attempt to commit that crime. Finally, Defendant is charged in Count 16 with conspiracy to transport in interstate commerce stolen goods or money, and in Count 19 with conspiracy in relation to counterfeit access devices. The potential penalties range from five years to life imprisonment.

If Defendant is convicted under 18 U.S.C. § 1591(a) of trafficking a person under the age

---

[7] With regard to Defendant Omar, Magistrate Judge Knowles imposed various conditions of release, including that Defendant maintain or actively seek employment; surrender any passport; avoid contact with any witness in this case; and refrain from possessing any firearms or destructive devices. Magistrate Judge Knowles also imposed travel restrictions and a curfew, and required Defendant to participate in a home confinement program that included electronic monitoring. (Docket No. 3055).

of 18, he will be subject to a mandatory term of imprisonment of ten years. Any sentence of this sort, however, would be an anomaly given the sentences that have thus far been imposed in this case.

According to the Government's post-hearing brief, the dispositions to date have been as follows:

> **Fuad Faisal Nur**: Originally charged with conspiring to sex traffic a persons under 18 and benefit financially from that venture (Counts One and Two), he was sentenced to 36 months after pleading guilty to Count 18 charging him with conspiracy to commit access device fraud.
>
> **Yahya Jamal Ahmed**: Not charged in the sex trafficking conspiracy counts, he was sentenced to time served based upon his guilty plea to Count 19 charging conspiracy to produce, use, or traffic in counterfeit access devices.
>
> **Abdifitah Jama Adan**: Originally charged in the sex trafficking conspiracy counts, those charges were dismissed when Adan was sentenced to ten month imprisonment based upon his plea of guilty to Count 22 charging him with providing a materially false statement.
>
> **Bibi Ahmed Said**: Pled guilty to charge of perjury before the grand jury and was sentenced to time served. Two counts charging obstruction of justice were dismissed at the time of sentencing.
>
> **Ahmed Aweys Sheik**: Not charged with the sex trafficking conspiracy offenses, Sheik was sentenced to 48 months imprisonment based upon his having pled guilty to Count 18 charging him with conspiracy to commit access device fraud. An obstruction of justice charge was dismissed at the time of sentencing.
>
> **Fatah Haji Hashi**: Acquitted by a jury on all sex trafficking counts (Counts 1, 2, 12 & 13), he was sentenced to time served based upon his plea of guilty to the charge of transporting in interstate commerce stolen goods valued at $5,000 or more.
>
> **Yahya Jamal Ahmed**: Not charged in the sex trafficking counts, Ahmed was sentenced to time served on his plea of guilty to Count 19 charging conspiracy to produce, use or traffic in counterfeit access devices.

(See, Docket No. 3757 at 16-18).

## II.

On December 18, 2013, the Sixth Circuit issued an unpublished Order on the Government's appeal of Judge Haynes' release of Defendant Omar and five of his Co-Defendants pending trial, including Defendant Yassin Abdirahman Yusuf who had been convicted of sex trafficking by the jury. United States v. Fahra, Case No. 13-5296 (6th Cir. Dec. 18, 2103).[8] In doing so, the court addressed the statutory factors under the Bail Reform Act of 1984, as well as Defendants' due process arguments.

## A.

Turning first to the statutory factors, the Sixth Circuit observed that a "rebuttable presumption of detention arises when there is probable cause to believe that the defendants, as in this case, committed an 'an offense under [18 U.S.C. §§ 1581-1597] for which a maximum term of imprisonment of 20 years or more is prescribed,'" and "there is probable cause to believe the defendant committed 'an offense involving a minor victim under' 18 U.S.C. § 1591." Slip op. at 6. For those Defendants yet to be tried (including Defendant Omar), the court observed that "[t]he grand jury indictment, standing alone, establishes probable cause to believe that these defendants committed the offenses with which they are charged." Id. (citing, United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010).

The Sixth Circuit also found that the weight of the evidence demonstrated that Defendants posed a risk of danger to others. It wrote:

> The indictments, the testimony and evidence presented at the defendants' detention hearings, and the testimony at trial evidence that the defendants were engaged in a conspiracy [to] traffic minors for sex. At this juncture, Jane Doe Two's age is a contested issue and her credibility has been damaged. Nonetheless, a jury convicted

---

[8] The Sixth Circuit's decision can be found in this Court's record at Docket No. 3550 and will be referenced herein as "Slip op."

6

> Yusuf of recklessly disregarding a conspiracy to traffic minors. Jane Doe Two testified at trial that she was unclear what her exact age was, and the government stipulated that her birth certificate was false. Therefore, the jury was aware that Jane Doe's age, and whether she was a minor had been called into question, even if it did not have all of the evidence now available. The district court also found that Jane Doe Two's voluntary sexual contact with the defendants weighed against a finding of dangerousness. But Jane Doe Two was a minor; thus, her ability to 'consent' to sexual relations with the defendants is questionable. More importantly, Jane Doe Two was only one of numerous minors victimized by defendants.

Id. At 7.

Finally, the Sixth Circuit wrote that "[t]he history and characteristics of the defendants and the nature of their offenses also support their detention." Id. Specifically as to Defendant Omar, the court stated that he "has several positive attributes – including a strong employment history and a supportive employer," but "his negative attributes – including both his criminal history and his efforts to hamper the investigation into these offenses – outweigh his positive factors." Id. at 8.

**B.**

With regard to the due process arguments, the Sixth Circuit acknowledged that Defendants had all been detained for more than two years. However, the court observed that "this is a complex case involving multiple-conspiracies spanning a several year period with overt acts that occurred in several states," and that "[f]or complex cases involving extensive conspiracies, lengthy detentions have been found constitutional." Id. at 9 (citing United States v. El-Grabowny, 35 F.3d 63, 65 (2nd Cir. 1994); United States v. Millan, 4 F.3d 1038, 1044 (2nd Cir. 1993)).

The Sixth Circuit went on to note that "whether the prosecution was responsible for the delay is also relevant." Id. The court found that the government bore "some culpability for the delay" resulting from Defendant Yusuf being granted a new trial, but that it was not responsible for "any delay attributable to the government's interlocutory appeal" or for "delay that are the result of

7

defendant's motion to sever, even if the motion is granted." Id. at 9-10.

The Sixth Circuit concluded by noting that the pretrial detentions of Defendants "d[id] not appear" to "have exceeded their potential sentences," and that

> [a]s previously discussed, the defendants' charged offenses are grave: they involve the sex-trafficking of minors and, for some of the defendants, the obstruction of justice. Further, the circumstances surrounding the commission of these offense [sic], the presumption of detention, and the defendants' lengthy criminal records all weigh against a finding that their constitutional rights were violated. This is particularly so, given that their detentions were based on their potential dangerousness to the community.

Id. at 10.

### III.

As a preliminary matter, the Government raises the issue of whether this Court has jurisdiction to hear the present Motion given the pendency of the appeal relating to the judgment of acquittals entered by Judge Haynes. Both parties believe such jurisdiction exists, and the Court agrees.

It is "generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," and "[t]he filing of a notice of appeal is an event of jurisdictional significance" that "confers jurisdiction on the court of appeals[.]" Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). That conferral of appeal "divests the district court of its control over those aspects of the case involved in the appeal." Id.

"This transfer of power, however, does not effect a total divestiture of jurisdiction from the district court[.]" Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 626 (6th Cir. 2013). The district court "retains jurisdiction to enforce its judgment, City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 394 (6th Cir. 2007), to proceed with matters that will aid the

8

appellate process, Cochran v. Birkel, 651 F.2d 1219, 1221 (6th Cir. 1981), and to adjudicate matters unrelated to the issues on appeal, Weaver v. Univ. of Cincinnati, 970 F.2d 1523, 1528 (6th Cir. 1992)." Id.

Adjudicating Defendant Omar's request for release is a "matter[] unrelated to the merits of the appeal." Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res., 71 F.3d 1197, 1203 (6th Cir. 1995). Accordingly, this Court has jurisdiction and turns to the merits of his Motion for Release.

## IV.

The Due Process Clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law[.]" Consistent with that clause, an individual may be detained prior to trial so long as that confinement does not amount to "punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979). This is because, while "[l]iberty is the norm," the "government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." United States v. Salerno, 481 U.S. 739 & 748 (1987).

There may come a point in time, however, when continued pretrial detention violates due process. The Supreme Court in Salerno declined to say where that line might be. Id. at 747 n.4. For their part, the lower courts have observed that there is no bright line which demarcates when a due process violation has occurred. See, United States v. Taylor, 602 F. App'x 713, 717 (10th Cir. 2015) (citation omitted) ("pretrial detention for a lengthy period of time may implicate due process concerns" but "'the Constitution imposes no bright-line limit on the length of pretrial detention'"); United States v. Briggs, 697 F.3d 98, 101 (2nd Cir. 2012) ("We have consistently held that due process places no bright-line limit on the length of pretrial detention"); United States v. Hazelwood,

9

2011 WL 680178, at *4 (N.D. Ohio Feb. 16, 2011) ("no court has propounded a bright line rule as to when a period of pretrial detention becomes excessive").

**A.**

In this case, the Government has taken the position Defendant's present due process challenge is barred because the Sixth Circuit has already reviewed the matter. In response to Defendant's Motion, the Government writes:

> The United States submits the Sixth Circuit's ruling that the defendant be detained constitutes law of the case as to the arguments the defendant presents to this court. Defendant's renewed argument to this Court is not based upon "substantially new evidence," there has been no intervening change of law since the decision of the Sixth Circuit, and the Sixth Circuit's decision was not clearly erroneous and enforcement of its command does not work substantial injustice.

(Docket No. 3757 at 1).

No doubt, much of what the Sixth Circuit stated in its December 18, 2013 Order constitutes the law of the case. There has been a sea change since then, however. Two years have passed, and the amount of time that Defendant has spent in pretrial detention has doubled. The very cases on which the Sixth Circuit relied for the proposition that "[f]or complex cases involving extensive conspiracies, lengthy detentions have been found constitutional," Slip op. at 9, involved pretrial detention of 27 months (El-Gabrowny) and 30 to 31 months (Millan), up to and including trial.

In this case, Defendant Omar has been detained for more than four years and no trial has yet been scheduled because of the pendency of the appeal. It could well be that Defendant, who is presumed to be innocent, will have spent a half decade or more behind bars before this case proceeds through trial. This makes the case markedly different than when it was reviewed by the Sixth Circuit, and markedly different from El-Gabrowny and Millan.

During the hearing on Defendant Omar's Motion, the Government also argued that "[t]he

10

Sixth Circuit in their opinion . . . alludes that the length at this point wouldn't be an issue because they [sic] noted that the defendants had not come close to the amount of time that they could be ordered to be served if convicted of the charges." (Hrg. Trans. Docket No. 3754 at 10). Apparently, this is a reference to the court's statement that "it does not appear that [Defendants'] pretrial detentions have exceeded their potential sentences.'" Slip op. at 10.

The Sixth Circuit's observation, however, was made in the context of its disagreement with Judge Haynes' finding "that some of the defendants' detentions already exceeded their sentencing ranges." Id. Although a factor to be considered, the Court does not believe that the Sixth Circuit's statement should be read as meaning that a constitutional violation does not occur until a defendant is nearing the sentence he could receive because this would suggest a "bright line" rule and, to a great extent, eliminate much of the need for determining, on a case-by-case basis, whether a due process violation has occurred. Moreover, it is highly doubtful that the Sixth Circuit contemplated that the appeal of Judge Haynes' substantive rulings would be pending more than two years after the appellate decision relating to pretrial release.

**B.**

"[W]hether a pretrial detention is unconstitutionally excessive is determined on a case-by-case basis," and the Sixth Circuit has found "the Second Circuit's case law on the subject to be particularly instructive." United States v. Watson, 475 F. App'x 598, 601 (6th Cir. 2012). Under that case law, "four factors [are] considered in determining if the pretrial detention is unconstitutionally excessive: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." Id. (citing, United States v. El-Hage, 213 F.3d 74,

11

80 (2nd Cir. 2000)).

The factors relating to the gravity of the crimes and any prosecutorial responsibility for delay have not changed since the Sixth Circuit issued its decision. What may have changed is the strength of the Government's evidence, and what most certainly has changed is the length of the detention that has already been served.

The parties have not cited, and the Court has not found, any appellate authority which has addressed, let alone approved, pretrial detention of the length involved here. It has been observed, however, that "[d]etention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process," United States v. Gonzales Claudio, 806 F.2d 334, 341 (2nd Cir. 1986). It has also been "recognize[d] that two years of pretrial detention is lengthy," United States v. Taylor, 602 F. App'x 713, 717 (10th Cir. 2015), that "[a] period of pretrial detention of this length is . . . 'a factor in [defendants'] favor' in finding a due process violation," Millan, 4 F.3d at 1044 (citation omitted), and that a period of twenty-seven months "is unquestionably a long duration, El-Gabrowny, 35 F.3d at 65. One Circuit has even "assume[d] that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement." United States v. Zannino, 798 F.2d 544, 548 (1st Cir. 1986).

Nevertheless, "[w]hile the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and 'will rarely by itself offend due process.'" El-Hage, 213 F.3d at 79 (collecting cases, citation omitted). To say that the length of detention alone will rarely offend due process does not mean that it is not possible.

In United States v. Rodriguez, 2012WL 6690197, at *1 (W.D.N.Y. Dec. 21, 2012) where

12

defendant was charged with "drug activity, firearm possession, and gang-based racketeering related to his membership in a street gang," a Magistrate Judge found that fifty months of pretrial incarceration "tend[ed] to make th[e] case the 'rare' instance when the total length of pretrial detention by itself offends due process." United States v. Rodriguez, 2012WL 6690197, at *1, *11 (W.D.N.Y. Dec. 21, 2012). [9] In doing so, he observed that "the Second Circuit never has assessed, let alone authorized, a total pretrial detention of 50 months or more under any circumstances," and noted that "prior instances when the Second Circuit authorized detention extending beyond 30 months involved very high levels of dangerous criminal activity," and "involved a Continuing Criminal Enterprise or an 'unprecedented scope of violence' related to international terrorism." Id. at 11; see, United States v. Ailemen, 165 F.R.D. 571, 578 (N.D. Cal. 1996) ("No case has upheld pretrial detention expected to last more than thirty-two months against a due process challenge"). The law in the Second Circuit is not controlling but, as noted, the Sixth Circuit has found its case law instructive.

If this is not the rare case where the length of pretrial detention alone amounts to a due process violation, it comes close. At a minimum, the extended length of pretrial incarceration calls for heightened scrutiny.

Courts that have canvassed the law relating to pretrial detention in the context of due process challenges have noted that the cases generally fall into three camps depending on the length of the

---

[9] The Court notes that in another decision out of that district, detention of 50 months was found not to violate due process where Defendant had "an extensive criminal history," was was "charged with being a member of a violent criminal enterprise which was engaged in drug trafficking, robberies, murders, and the illegal use of firearms." United States v. Speed, 2013 WL 6531950, at *4 (W.D.N.Y. Dec. 12, 2013). Even so, the District Judge noted that "this is an extremely prolonged period of time to be detained and awaiting trial," and observed that "there could come a point, in the near future, where the length of detention alone warrants reconsideration of defendant's request" for release. Id. at *2, *5.

13

detention. The cases suggest that, the longer the detention, the more weighty countervailing concerns must be. One court has explained:

> The first group is composed of cases where the length of the defendant's detention is relatively short, between six months and a year. . . . In these cases, many courts have rejected the balancing approach and concluded that due process challenges are premature.
>
>      \*         \*         \*
>
> A group of intermediate cases involve pretrial detention between approximately one and two years. Courts faced with cases in this group typically consider all the due process factors, and apply the same balancing factors, but often place special emphasis on the government's role in causing unnecessary delay. . . . This focus on the government's role in causing any delay "reflect a feeling in some courts that they can be fairly confident that detention is being pressed primarily to achieve legitimate regulatory goals only as long as it appears that the prosecution is not unnecessarily protracting the pretrial period." . . .
>
> Finally, at the far end of the spectrum, are cases in which pretrial detention is very long. In these cases, which include those where pretrial detention is two years or more, courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention.

United States v. Cos, 2006 WL 4061168, at \*6-7 (D.N.M. Nov. 15, 2006) (internal citations omitted); accord, Ailemen, 165 F.R.D. at 582-583 (N.D. Cal. 1996) (extensively canvassing the law, noting the three categorizations, and concluding that "[s]ince the non-speculative expected length of [defendant's] detention will be at least thirty-five months, the length of detention prong of the due process analysis weighs strongly in favor of releas[e]" and it therefore "follows that the other two prongs—government responsibility for delay and threats to the government's regulatory interests (flight/dangerousness)—will have to weigh strongly in favor of the government to justify continued detention") ; see also, United States v. Briggs, 697 F.3d 98, 101 (2nd Cir. 2012) ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying

14

detention must be if it is to be deemed sufficient to justify the detention's continuance"); United States v. Gallo, 653 F. Supp. 320, 343 (E.D.N.Y. 1986) ("Lengthy pretrial detention can be justified only when countervailing interests are extraordinarily weighty and compelling, and when there is no alternative to detention that will vindicate those interests in a less restrictive manner).

In this case, while the Government may not be responsible for much of the delay, it has not shown special, let alone extraordinary, circumstances that would suggest Defendant Omar's release would pose an undue risk of danger or flight, and his earlier release for more than a year undercuts any such assumption. The mere fact that detention two years ago may have been consonant with due process does not make it so today.

## C.

As indicated previously, liberty is the norm in our society. "[L]ong periods of pretrial detention are anathema to our basic notions of due process." Gallo, 653 F. Supp. at 343.

"When assessing the validity of a pretrial detention, the central issue is the detainee's right, in accordance with due process, to be free from punishment before the adjudication of guilt." Cos, 2006 WL 4061168 at *7. Thus, while pretrial detention which serves a regulatory purpose is valid, it "assumes a punitive character when it is prolonged significantly." Id.

Defendant Omar's detention has crossed the threshold from regulatory to punitive. By any account his pretrial incarceration of more than four years is extraordinary. It is all the more extraordinary when one considers that he, who is presumed to be innocent, has now served more time in jail than any of his 29 co-Defendants in this case – some of whom, too, were originally charged with sex trafficking. The fact that some sex-trafficking and obstruction of justice charges have been dismissed at the very least raises the specter that Government's case may not be as strong

15

as the Sixth Circuit was led to believe.[10]

The punitive nature of this Defendant's detention is also shown by the treatment other Defendants who have been charged with sex trafficking have received. Not only have sex trafficking charges been dismissed as to some so as to elicit guilty pleas (e.g. Defendants Fuad Nur, Abdifitah Ada and Ahmed Sheik), others who face those very charges have been free for years, including Abdullahi Sade Afyare, Andrew Kayachith, and Bashir Yasin Mohamud.

The punitive nature of detention is also exhibited by the fact that some Defendants who are free and facing similar charges have criminal histories at least as significant, if not more significant, than that of Defendant Omar. Defendant has been arrested approximately six times, mostly for traffic offenses. While his record indicates that he has been charged with assault and patronizing a prostitute, it appears that his only conviction has been for reckless driving.

In contrast, Defendant Bashir Mohamud has been arrested on 20 separate occasions, and has pled guilty to charges including assault, obstructing legal process, theft, conspiracy to commit burglary, trespassing, and providing a false name. (Docket No. 995 at 9-10). Defendant Abdifatah Omar was on probation at the time of crimes alleged in the Indictment, and the Government asserted at earlier detention hearings that he (1) was involved in a carjacking and robbery in July 2010 and that, (2) while behind bars, conspired to have the charges dismissed by providing police with false statements. (Docket No. 346 at 43). Defendant Kayachith, found guilty of sex trafficking by the jury in this case, was on probation for three separate charges when the Indictment was returned. His record includes several theft and trespassing convictions, and arrests for robbery, theft, obstruction

---

[10] Thus far, only nine Defendants have gone to trial. Even leaving aside the acquittals by Judge Haynes which are on appeal, two-thirds of those tried were acquitted by the jury on the sex trafficking charges.

of justice and contributing to the delinquency of a minor. (Docket No. 364 at 43). Unless the goal it to punish or to seek retribution for crimes yet to be proven, it makes little sense that these Defendants remain free while Defendant Omar now enters into his fifth year of pretrial detention.

## V.

Having considered all of the appropriate factors, the Court finds that Defendant Omar's continued detention will violate the Due Process Clause of the Fifth Amendment to the Constitution. Accordingly, the Court will grant his Renewed Motion to Reconsider Detention Order and Open Detention Hearing, and order his release pending trial, subject to appropriate terms and conditions that will insure the safety of the community and his presence at trial and all pretrial proceedings.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE